UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TEROS A. SWEENEY,       )
                    )
       Plaintiff,      )
                    )
v.                  )     No.:  3:16-CV-254-TWP-HBG
                    )
OFFICER DARRELL SEXTON and CITY )
OF KNOXVILLE,       )
                    )
       Defendants.   )

## MEMORANDUM AND ORDER

Before the Court are a pro se prisoner's civil rights complaint filed under 42 U.S.C. § 1983,

his application for leave to proceed *in forma pauperis*, and a supplement to the application [Docs.

1-2, 6]. It appears from the application and supplement that Plaintiff lacks sufficient financial

resources to pay the $350.00 filing fee all at once. Therefore, Plaintiff's application is **GRANTED**

[Doc. 1] and he is permitted to file this case without prepayment of the fee.

## I.    FILING FEE

However, because Plaintiff is an inmate in the West Tennessee State Penitentiary

("WTSP") in Henning, Tennessee, he is **ASSESSED** the civil filing fee of $350.00. *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) ("Prisoners are no longer entitled to a waiver of

fees and costs."), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951

(6th Cir. 2013).

The custodian of Plaintiff's inmate trust account at the WTSP is **DIRECTED** to submit to

the Clerk of Court, as an initial partial payment, twenty percent (20%) of the greater of either the

average monthly deposits or the average monthly balance in the account for the six (6) months immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). After the initial partial filing fee is paid, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk of Court. 28 U.S.C. § 1915(b)(2). Payments should be mailed to: Clerk's Office, USDC; 220 West Depot Street, Suite 200; Greeneville, TN 37743.

The Clerk is **DIRECTED** to send a copy of this Order to the custodian of inmate accounts at WTSP to ensure compliance with these fee-assessment procedures. The Clerk is also **DIRECTED** to forward a copy of this Order to the Court's financial deputy.

The agency having custody of Plaintiff shall collect the filing fee as funds become available and shall continue to collect monthly payments from his inmate account until the entire filing fee of $350.00 is paid. This Order shall become a part of Plaintiff's prison file and follow him if he is transferred to another institution. Plaintiff is **ORDERED** to notify the Court of any change of address if he is transferred to another institution and to provide the prison officials at any new institution with a copy of the Order.

## II.    PLAINTIFF'S CONTENTIONS

The Defendants are Officer Darrell Sexton ("Sexton"), a K-9 Training Officer with the Knoxville, Tennessee Police Department, and the municipality of Knoxville, Tennessee [Doc. 2 pp.1, 3]. Plaintiff maintains that on May 31, 2014, Defendant Sexton began questioning him about a domestic disturbance [*Id.* at 3-4]. When problems arose concerning Plaintiff's identity, Sexton attempted to take him into custody [*Id.* at 4] and, presumably, put his hand on Plaintiff during the process. Plaintiff pulled his hand away from Sexton and asked if he were under arrest, as Sexton

tried to yank him from his sitting position by the single handcuff attached to his right wrist and to sling him to the ground [*Id.*].  Plaintiff urged Sexton to forego further attempts to subdue him and to take him into custody, pleading with Sexton, "Come on, we don't have to go through all this" [*Id.*].  Sexton ignored Plaintiff's entreaties, pulled out his Taser, and shot Plaintiff with the Taser [*Id.*].

Plaintiff fell to the ground [*Id.*].  Sexton yelled to Plaintiff to get down on the ground, though Plaintiff at that point was lying on the ground in a daze due to being tased [*Id.*].  Sexton directed Plaintiff to put his hands behind his back, and Plaintiff responded that, if Sexton would stop tasing him, he would comply with that directive [*Id.*].  Sexton pounced on top of Plaintiff and ordered him to turn over, which prompted Plaintiff to retort, "How can I with you sitting on top of me?" [*Id.*].  Sexton warned Plaintiff that he was "gonna have to shoot [him]," and Sexton reached down to grasp the gun sheathed in his holster [*Id.*].  Plaintiff grabbed Sexton's wrist to prevent him from unholstering his gun [*Id.*].  Sexton repeatedly commanded Plaintiff to let go of his wrist or else he would shoot him [*Id.*].  Plaintiff persisted in holding onto Sexton's wrist but, due to the effects of the tasing, Plaintiff's strength was waning [*Id.* at 4-5].

Sexton then punched Plaintiff in the face several times, wrested his wrist from Plaintiff's hand, placed his forearm on Plaintiff's chest, pulled out his gun, placed it on Plaintiff's left thigh and pulled the trigger [*Id.* at 5].  Sexton repositioned the weapon to Plaintiff's right thigh and pulled the trigger again [*Id.*].  Sexton moved the weapon to Plaintiff's left thigh and shot him in his left thigh a second time [*Id.*].  Sexton turned Plaintiff over on his back and walked away to deal with the crowd of onlookers who had gathered at the scene [*Id.*].

Plaintiff was taken to the hospital and was treated for, among other injuries, a severed femoral artery in his left thigh, a damaged nerve in his left leg, and a shattered femur in his right

leg [*Id.*]. During Plaintiff's 30-day stay in the hospital, he required a full blood transfusion of 12 units of blood and 9 units of plasma, and he underwent multiple surgeries and procedures to repair the trauma in both of his legs [*Id.*]. Plaintiff asserts that Sexton's actions amounted to excessive force in violation of Plaintiff's civil rights [*Id.* at 6].

Plaintiff contends that Sexton's actions caused him to sustain permanent physical injuries. More specifically, Plaintiff maintains that he is now disfigured by the stitches, rods, pins, and staples required to repair the damage from the wounds and from the wounds themselves; that the implantation of medical appliances into his right leg to repair his shattered femur bone continue to plague him; that his right leg has grown shorter than his left leg; and that he has developed a permanent limp resulting from the need to adjust his gait to accommodate his foreshortened leg [*Id.*]. According to Plaintiff, he has sustained additional injuries from Sexton's use of potentially lethal force, including Post-Traumatic Stress Disorder; having nightmares, anxiety, and a mistrust of law enforcement officials; and that he is experiencing high blood pressure from being required to cope with the aftermath of his near-death encounter [*Id.*].

For these alleged constitutional violations, Plaintiff seeks twenty million dollars ($20,000,000) in compensatory damages and twenty-five million dollars ($25,000,000) in punitive damages [*Id.* at 7].

III.    **SCREENING**

The Court must screen complaints filed by prisoners who are proceeding *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (citing 28 U.S.C. § 1915(e)(2), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

Dismissal is required if complaints are frivolous or malicious, if they fail to state a claim for relief, or if they are seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

In performing its screening task, the Court recognizes that pro se pleadings filed in civil rights cases are construed indulgently and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Even so, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [§§ 1915A(b)(1) and 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *See Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The Court examines the complaint under these guidelines.

## IV.  LAW AND ANALYSIS

### A.  Timeliness of Claims

5

Plaintiff complains that a shooting that occurred on May 31, 2014 constituted unreasonable force as prohibited by the Constitution. U.S. CONST. amend IV (protection from unreasonable searches and seizures). For the purposes of 42 U.S.C. § 1983, state statutes of limitations apply to determine the timeliness of claims. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985), *superseded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004). The one-year statute of limitations period contained in Tenn. Code Ann. § 28-3-104(a) applies to civil rights claims arising in Tennessee. *See Berndt v. Tenn.*, 796 F.2d 879, 883 (6th Cir. 1986); *see also Porter v. Brown*, 289 F. App'x. 114, 116, 2008 WL 3838227, at *2 (6th Cir. 2008) ("[O]ur precedent has long made clear that the limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)."). Ordinarily, the statute begins to run when a plaintiff knows or has reason to know of the injury upon which his action is based. *See Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 636 (6th Cir. 2007); *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).

Plaintiff would have known of any injury he incurred from the violation of his constitutional rights on May 31, 2014, the date Sexton shot him. This means that Plaintiff would have had one year from that date, i.e., May 31, 2015, to file this instant § 1983 action. Plaintiff signed the complaint on April 25, 2016 [Doc. 2 p.7] and enclosed it in an envelope postmarked May 17, 2016 [Doc. 1 p.3]. Because the postal markings do not clearly indicate that the postmarked date is the date the complaint actually was delivered to the prison authorities for mailing, the Court deems this action to have been filed on April 25, 2016, the date the pleading was signed. *Houston v. Lack*, 478 U.S. 266, 276 (1988) (deeming a prisoner's action to be filed on the date that it is properly delivered to the prison officials for mailing); *Brand v. Motley*, 526

6

F.3d 921, 925 (6th Cir. 2008) (noting that the signing date on a pro se prisoner's pleading will be deemed to be the filing date, unless there is evidence to the contrary),

Plaintiff filed his complaint just shy of eleven months too late. Therefore, the applicable statute of limitations bars his claims, and they are due to be dismissed for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (noting that "[i]f the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."). Furthermore, claims which are time-barred under the relevant statute of limitations are frivolous. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

### B. Equitable Tolling

The statute of limitations in this § 1983 action may be equitably tolled, under certain circumstances. *See Howard v. Rea*, 111 F. App'x 419, 421 (6th Cir. 2004) (explaining that in a § 1983 case "[t]he statute of limitations may be equitably tolled"). The factors to be considered in determining whether equitable tolling is warranted are: (1) a lack of notice of the filing requirements; (2) a lack of constructive knowledge of the filing requirement; (3) a plaintiff's diligence in pursuing his rights; (4) the absence of prejudice to a defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988); *Howard*, 111 F. App'x at 421(reciting the *Andrews* factors and observing that equitable tolling depends upon application of those factors). The doctrine of equitable tolling is used sparingly, typically "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham- Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560-61 (6th Cir. 2000).

Equitable tolling has been allowed where, **inter alia**, a plaintiff "actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Plaintiff could argue that the statute should be equitably tolled by a prior § 1983 action he filed in this Court.

In this vein, the Court takes judicial notice of that earlier case, *see Sweeney v. Sexton*, No. 3:15-CV-230 (E.D. Tenn. July 15, 2015), in which Plaintiff presented the same claims offered in the instant case. The previous action was filed on May 29, 2015, two days before the statute of limitations lapsed. The pleading was not defective; it survived the screening test and advanced to the point of service. *See id.*, Doc. 5. However, the case was dismissed without prejudice based on Plaintiff's failure to comply with the Court's order to complete and return the summonses for the defendants in a timely manner. *See id.*, Doc. 7.

Following the dismissal of his lawsuit, Plaintiff did not move the Court to alter or amend the judgment, did not appeal, and did not communicate further with the Court regarding the dismissal of his case. Instead, he filed this instant case on April 25, 2016. The failure to take any of the above actions in connection with his prior case evinces a lack of diligence, and a "lack of diligence by a claimant acts to defeat his claim for equitable tolling." *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1180 (6th Cir. 1995). While Plaintiff has not sought equitable tolling, the Court does not find equitable tolling to be justified under the circumstances and will not apply it to save this untimely § 1983 complaint.

## V.     CONCLUSION

For the reasons discussed herein, the Court **FINDS** that Plaintiff's pro se § 1983 civil rights complaint is barred by the applicable statute of limitations and that equitable tolling does not salvage this otherwise time-barred case. For those same reasons, the Court **CERTIFIES** that any

8

appeal from this decision and accompanying judgment would not be taken in good faith and would be frivolous. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

Therefore, if Plaintiff files a notice of appeal, he should either pay the full appellate filing fee of five-hundred, five dollars ($505.00) or submit a motion for leave to appeal *in forma pauperis* and a certified copy of his inmate trust account statement showing the transactions in the account for the last six months. 28 U.S.C. § 1915(a)(2).

This dismissal counts as a "strike" under the three-dismissal provision in 28 U.S.C. § 1915(g).

**AN APPROPRIATE ORDER WILL ENTER.**


__s/ Thomas W. Phillips_____
SENIOR UNITED STATES DISTRICT JUDGE